JOSHUA I. CAMPBELL
Jardine, Stephenson, Blewett & Weaver, P.C.
300 Central Avenue, Suite 700
P.O. Box 2269
Great Falls, MT  59403-2269
(406) 727-5000
(406) 761-4273-Fax
jcampbell@jardinelaw.com
*Attorneys for Plaintiff Allied World Specialty Insurance Company*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| ALLIED WORLD SPECIALTY INSURANCE COMPANY, a Delaware Corporation,<br><br>              Plaintiff,<br><br>      -vs-<br><br>URBAN RANCH, a Montana sole proprietorship; MURRAY J. DIGHANS, a Montana citizen; and DEANNE A. DIGHANS, a Montana citizen,<br><br>              Defendants. | Cause No. _____<br><br><br><br><br>**COMPLAINT** |

Plaintiff Allied World Specialty Insurance Company ("Allied World") hereby complains and alleges as folDaulows:

**PARTIES**

1. Allied World is a corporation duly organized and existing under the laws

of the State of Delaware, with its principal place of business in the State of Connecticut, and authorized to do business as a surety in the State of Montana.

2. Upon information and belief, Peerless Specialty Flooring, LLC ("Peerless") is a Montana limited liability company duly organized and existing under the laws of the State of Montana, whose principal place of business is in Peerless, Montana.  Peerless filed for Chapter 7 Bankruptcy relief in the District of Maryland, Case Number 16-18041. This complaint seeks no relief or cause of action against Peerless in accordance with the automatic stay.

3. Upon information and belief, Defendant Urban Ranch is a Montana sole proprietorship duly organized and existing under the laws of the State of Montana, whose principal place of business is in Peerless, Montana.

4. Upon information and belief, Defendant Murray J. Dighans is a resident of the State of Montana, residing in Peerless, Daniels County, Montana.

5. Upon information and belief, Defendant Deanne A. Dighans is a resident of the State of Montana, residing in Peerless, Daniels County, Montana.

## JURISDICTION AND VENUE

6. The matter in controversy in this action exceeds, exclusive of interest and costs, the sum of $75,000.  The court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332.

7. The Defendant Urban Ranch has its principal place of business in

Daniels County and within the State of Montana. Defendants Murray J. Dighans and Deanne A. Dighans have their principal place of domicile in Daniels County within the State of Montana.

8. Venue in this court is proper pursuant to 28 U.S.C. §1391(b) because the Defendants reside in this District.

## FACTUAL BACKGROUND

### A. Indemnity Agreement, Relevant Construction Project and Bonds Issued by Allied World on Peerless's Behalf

9. Allied World incorporates by reference all of its allegations contained in paragraphs 1 through 8 as if each were fully alleged herein.

10. Allied World is qualified to conduct business as a surety within the State of Montana and to engage in the activity described in this complaint ("Complaint"). Among its business operations, Allied World is engaged in the business of issuing surety bonds.

11. Peerless is a company that provides wood laminate, carpet and vinyl composition tile flooring. Defendant Murray J. Dighans is the managing partner of Peerless.

12. Allied World furnished surety bonds on behalf of Peerless.

13. As partial consideration for Allied World's agreement to furnish surety bonds on behalf of Peerless, on or about July 15, 2015, Peerless, Urban Ranch, Murray J. Dighans and Deanne A. Dighans (collectively, the

3

"Indemnitors"), properly and formally executed and entered into an Agreement of Indemnity ("Indemnity Agreement"). A true and correct copy of the Indemnity Agreement is attached hereto as **Exhibit A** and incorporated into this Complaint by reference.

14. Pursuant to the terms of the Indemnity Agreement, the Indemnitors, agreed to, jointly and severally, exonerate and indemnify Allied World from and against any liability for losses and expenses, including interest, court costs, and attorney fees incurred as a consequence of issuing bonds on behalf of Peerless or as a consequence of a breach of the Indemnity Agreement by any of the Indemnitors.

15. Specifically, the Indemnity Agreement provides in part:

III. INDEMNITOR COVENANTS

Each Indemnitor hereby agrees and covenants with the Surety as follows:

***

3.2 INDEMNITY – at all times jointly and severally to indemnify and to hold the Surety harmless from and against any and all liability for any and all Loss, and in such connection Indemnitors will pay the Surety for all Losses specified or otherwise described in Surety's notice, no later than close of business on the Due Date with respect to such notice, whether or not the Surety has actually made any payment thereon as of such Due Date.

3.3 DEPOSIT OF FUNDS – (a) to deposit with the Surety as collateral, by the Due date and after receipt of the Surety's written demand, the sum equal to an amount determined by the Surety, to cover liability for Loss covered by Section 3.2, as determined by the Surety. At Surety's sole

option, such collateral will be in addition to and not in lieu of any other collateral previously provided to the Surety. Further, if an Event of Default (as defined in this Agreement below) has occurred, the Surety will be entitled to demand that the Indemnitors place with Surety funds equal to the aggregate penal sum of all then-outstanding Bonds, as such sum is determined by the Surety in its sole discretion (regardless of whether any actual liability for Loss exists under any of the Bonds).

(b)  If Indemnitors fail to pay in full the amount demanded pursuant to this Agreement on the Due Date, Indemnitors will pay Interest on such overdue amount from the Due Date up to the date of the actual payment to the Surety.

(c)  Surety will have the right to use the collateral, or any part thereof, in payment or settlement of any liability, Loss or expense for which the Indemnitors are or would be obligated to indemnify the Surety under the terms of this Agreement…

(d)  Indemnitors acknowledge that the failure to deposit with the Surety, by the Due Date, the sum demanded by the Surety as collateral security will cause the Surety irreparable harm for which the Surety has no adequate remedy at law. Indemnitors agree that the Surety will be entitled to injunctive relief for specific performance of the Indemnitor's obligation to deposit with the Surety the sum demanded as collateral security and hereby waive any claims or defenses to the contrary and the posting of any bonds by the Surety in connection therewith.

*\*\**

IV.  SETTLEMENTS, USE OF COLLATERAL AND PAYMENT

4.1 SETTLEMENTS.  The Surety is granted the option to adjust, settle or compromise any Claim, demand, suit or judgment with respect to any Bond in Surety's sole discretion. An Indemnitor may request the Surety to litigate such Claim or demand, or to defend such suit, or to appeal from such judgment, but Surety will be under no obligation to do so unless (i) Surety is provided with an opinion of Indemnitor's counsel which indicates that such suit or appeal has reasonable basis in law, and (ii) the Indemnitor deposits with the Surety, at the time of such request,

cash or collateral satisfactory to the Surety to be used to pay any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

\*\*\*

V. ASSIGNMENT, EVENTS OF DEFAULT, ADVANCES, ATTORNEY-IN-FACT

5.1 ASSIGNMENT; COLLATERAL

5.1.1 Each principal and Indemnitor hereby assigns, transfers, pledges, conveys and sets over to the Surety, as collateral to secure every obligation under this Agreement, whether such obligation has arisen before or after the date of this Agreement (with the assignment of any contract to become effective as of the date of the Bond covering such contract), a security interest in the following, whether now owned or hereafter existing or acquired:

(a) all of the Principals' and/or Indemnitors' right, title and interest in, and arising in any manner out of, all contracts referred to in the Bonds (whether or not bonded) or in, or arising in any manner out of the bonds;

(b) any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds including, but not limited to, all percentages retained, progress payments, deferred payments, compensation for extra work and proceeds of damage claims;

(c) all of the Principals' and/or Indemnitor' rights, title and interest in and to all machinery, supplies, equipment, plant, tools and materials of every nature and description which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which may be in process of construction, in storage elsewhere, or in

6

> transportation to any and all of said sites;…
>
> \*\*\*
>
> 5.2 EVENTS OF DEFAULT – Surety, or any persons the Surety designates, may enforce the security interests granted herein and may take, and are hereby authorized and empowered by each Principal and each Indemnitor to take, any action necessary to obtain possession of the funds, rights and property subject thereto if any of the following occur (each an "Event of Default")…
>
>> (2) a failure by any Principal or Indemnitor, or delay, refusal, or inability to pay bills or other indebtedness incurred in, or in connection with, the performance of any contract covered by a Bond;

16. On or about June 25, 2015, Peerless entered into a Subcontract Agreement ("Subcontract") with Foulger-Pratt Contracting, LLC, where Peerless was to provide wood laminate, carpet and VCT flooring for the Art Place at Ft. Totten located in Washington, D.C. ("Project").

17. On or about August 14, 2015, pursuant to and at the request of Peerless and the Indemnitors, Allied World, as surety, issued payment and performance bond number S001-1382 with the penal sum of $1,326,000.00 ("Bond") on behalf of Peerless as principal, in connection with the Project, identifying Foulger-Pratt Contracting, LLC, as obligee ("Obligee"). A true and correct copy of the Bond is attached hereto as **Exhibit B**.

**B.     Obligee Notice of Default**

18. Allied World incorporates by reference all of its allegations contained in paragraphs 1 through 17 as if each were fully alleged herein.

19. On or about June 20, 2016, Obligee issued a Notice of Default letter to Peerless and Allied World. A true and correct copy of the Notice of Default letter is attached hereto as **Exhibit C**.

20. The Notice of Default states that Peerless provided verbal notice to Obligee that "Peerless closed their offices and ceased operations on June 16, 2016 and had declared bankruptcy on June 14, 2016." See **Exhibit C**.

21. The Notice of Default provided Peerless and Allied World with the opportunity to reimburse Obligee for any increased costs or damages as a result of the delays caused by Peerless's inability to complete the work under the Subcontract. See **Exhibit C**.

22. To date, Peerless and the Indemnitors have not cured its defaults under the Subcontract.

**C. Claim Against Payment Bond Provided by Allied World on Behalf of Peerless**

23. Allied World incorporates by reference all of its allegations contained in paragraphs 1 through 22 as if each were fully alleged herein.

24. On or about July 7, 2016, Allied World received a claim against the Bond issued for the Project from Spartan Surfaces Inc. ("Spartan Surfaces") arising out of materials that were provided on behalf of Peerless for which compensation by Peerless was not made. The total amount of Spartan Surfaces's claim is $242,670.41. A true and correct copy of the Spartan Surfaces surety claim letter is

attached hereto as **Exhibit D**.

25.     The Indemnitors did not provide Allied World with any defenses or objections to the Spartan Surfaces claim.

**D.     Allied World's Collateral Demand**

26.     On June 21, 2016, Allied World demanded that the Indemnitors provide $1,300,000.00 in cash or certified funds as collateral to offset potential losses Allied World was facing as a result of the claims for payment and performance made under the Bond issued on behalf of Peerless pursuant to Paragraph 3.3. of the Indemnity Agreement. The expiration date for the Indemnitors to satisfy Allied World's Collateral Demand was set for July 1, 2016. A true and correct copy of the Allied World's Collateral Demand is attached hereto as **Exhibit E** and incorporated into this Complaint by this reference.

27.     The Indemnitors failed to comply with Allied World's Collateral Demand.

**E.     Consultant Fees, Expert Fees, Legal Fees and Other Costs and Expenses**

28.     In order to conduct investigation, resolve claims and mitigate damages on the Project, Allied World retained the services of outside counsel and construction consultants. Allied World has paid its attorneys and consultants for their services to date, and continues to incur additional charges.

## COUNT I – ALL DEFENDANTS
### Breach of Contract of Indemnity

29. Allied World incorporates by reference all of its allegations contained in paragraphs 1 through 28 as if each were fully alleged herein.

30. Peerless entered into the Subcontract with Obligee in relation to the Project. Peerless undertook certain contractual obligations pursuant to the Subcontract.

31. At request of Peerless, Allied World issued the Bond on the Project.

32. Peerless failed to complete the contractual obligations of the Subcontract because Peerless failed to pay for all equipment, material and services for which Peerless contracted.

33. Obligee made demand of Allied World under the Bond arising out of Peerless's inability to complete the work under the Subcontract.

34. Spartan Surfaces made demand of Allied World under the Bond arising out of nonpayment of invoices on the Project. Peerless refused to pay Spartan Surfaces the amounts owed.

35. Pursuant to the Indemnity Agreement, Allied World performed investigations of the aforementioned claims, resulting in Allied World incurring attorneys' fees, costs, and expenses for which Defendants are obligated to reimburse Allied World.

36. To date, Urban Ranch, Murray J. Dighans and Deanne A. Dighans, as

indemnitors under the Indemnity Agreement, have failed to indemnify, exonerate, and reimburse Allied World for all losses, attorneys' fees, costs, and expenses incurred by Allied World for its losses under the Bond.

37. The breaches of the Indemnity Agreement include, but are not necessarily limited, to the following:

    a. Claim against the Bond by Obligee and Spartan Surfaces for which Allied World shall pay;

    b. Claims against the Bond by other contractors, subcontractors, suppliers, and equipment rental companies that Allied World was forced to investigate;

    c. The Defendants' failure to cooperate with Allied World's investigations of claims on the Bond;

    d. The Defendants' failure to indemnify Allied World for all costs and expenses incurred in investigating the claims made against the Bond;

    e. The Defendants' failure to indemnify Allied World from and against any and all losses, liabilities, costs, and expenses of whatsoever kind or nature arising out of Allied World's issuance of the Bond; and

    f. The Defendants' failure to deposit collateral with Allied World

sufficient to offset any and all losses, liabilities, costs, and expenses of whatsoever kind or nature arising out of Allied World's issuance of the Bond.

38. The Defendants have failed to comply with their indemnity obligations under the terms of the Indemnity Agreement.

39. Allied World has incurred liability and suffered losses as a result of issuing the Bonds. As a direct and proximate result of Allied World's issuance of the Bond, and the breaches set forth in above, Allied World has suffered damages to date in an amount to be proven at trial.

40. Allied World performed all of the terms, covenants, and conditions on their part to be performed under the terms of the Indemnity Agreement and the Bond.

## PRAYER FOR RELIEF ON COUNT I

WHEREFORE, Allied World Specialty Insurance Company, prays for:

a. Judgment against the Defendants, in the amount of its actual costs and estimated loss to date, plus all costs and expense, including attorney fees and interest, in the amount that Allied World has incurred;

b. Order the Defendants to indemnify and exonerate Allied World for all liabilities, losses, and expenses incurred by Allied World as a result of Allied World having executed the bonds;

  c. Order the Defendants to pay Allied World's costs, including reasonable attorneys' and consulting fees incurred herein;

  d. For such additional relied as this Court deems appropriate.

## COUNT II – ALL DEFENDANTS
### Specific Performance of Contract of Indemnity (Failure to Post Collateral)

41. Allied World incorporates by reference all of its allegations contained in paragraphs 1 through 40 as if each were fully alleged herein.

42. The Defendants and each of them entered into the Indemnity Agreement with Allied World in consideration of the execution of the Bond, among other things. Paragraph 3.2 of the Indemnity Agreement under "INDEMNITY" provides that the Defendants, and each of them, agree to "indemnify and to hold the Surety harmless from and against any and all liability for any and all Loss, and in such connection Indemnitors will pay the Surety for all Losses specified or otherwise described in Surety's notice, no later than close of business on the Due Date with respect to such notice, whether or not the Surety has actually made any payment thereon as of such Due Date."

43. Further, Paragraph 4.3 of the Indemnity Agreement states, "In the event of any Loss payment by the Surety, the Indemnitors further agree that in any accounting between the Surety and Indemnitors, the Surety will be entitled to charge for any and all disbursements made by it in good faith concerning the matters contemplated in this Agreement under the belief that it is, or was, or might

be liable for the sums and amounts so disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments the Surety made will be prima facie evidence of the fact and amount of the Surety's liability."

44. In June 21, 2016, Allied World demanded that the Defendants post collateral in the sum of $1,300,000.00 for Allied World to hold as collateral against pending claims, costs and expenses under the Bond.

45. The Defendants have failed to pay any sum as collateral to Allied World.

46. The Defendants, and each of them, have failed and refused, and continue to fail and refuse, to perform their obligations under the Indemnity Agreement.

47. Allied World's remedy at law is inadequate in that Allied World is exposed to liability which is not liquidated at this time, and if the Defendants are not compelled to perform their obligations under the Indemnity Agreement, the Defendants will likely transfer or dissipate all of their assets in an attempt to avoid their obligations to Allied World.

48. Allied World's losses and/or reserves at the present time are equal to or in excess of $1,300,000.00.

## PRAYER FOR RELIEF ON COUNT II

WHEREFORE, Allied World respectfully requests this Court grant the following relief:

a. Order the Defendants to indemnify and exonerate Allied World for all liabilities, losses, and expenses incurred by Allied World as a result of Allied World having executed the Bond and to post collateral;

b. Order the Defendants to pay for Allied World's costs, including reasonable attorneys' and consulting fees incurred herein;

c. Order the Defendants to provide Allied World full and free access to inspect their books and records;

d. For such additional relied as this Court deems appropriate.

## COUNT III – ALL DEFENDANTS
### *Quia Timet*

49. Allied World incorporates by reference all of its allegations contained in paragraphs 1 through 48 as if each were fully alleged herein.

50. The Defendants are obligated under the doctrine of *Quia Timet* to post collateral security to Allied World sufficient to fully cover the Loss Reserve posted by Allied World, which amount includes all losses, costs, and expenses previously incurred and which Allied World anticipates it will incur as a consequence of issuing the Bond on behalf of Peerless.

51. The Defendants failed to date to discharge their respective duties

under the Indemnity Agreement by failing to deposit collateral with Allied World and failing to indemnify Allied World.

52. Allied World believes that the Defendants will attempt to avoid their obligations to indemnify Allied World under the terms of the Indemnity Agreement by transferring and/or conveying their assets to satisfy obligations other than those covered by the Bond or otherwise included within the scope of the Indemnity Agreement, or liquidating their assets and avoiding the jurisdiction of this Court.

53. Allied World has no adequate remedy at law for the injuries currently being suffered. If the Defendants are not immediately enjoined from transferring their assets, the assets will be disposed of permanently, and the Defendants will render themselves insolvent, all to the prejudice of Allied World.

54. As a proximate result of the conduct of the Defendants, and each of them, Allied World has been, or will be, damaged so long as the Defendants are able to circumvent their obligations to Allied World under the Indemnity Agreement by transferring their assets. The full amount of this damage is at least $1,300,000.00.

55. Allied World is entitled to receive a temporary restraining order, a preliminary injunction, and a permanent injunction, requiring the Defendants to post collateral with Allied World sufficient to fully cover the Loss Reserve posted

by Allied World, or in the alternative, enjoining the Defendants, and each of them, as well as their agents, servants, employees, and all persons acting under, in concert with, or for them from further transferring assets absent further court order.

### PRAYER FOR RELIEF ON COUNT III

WHEREFORE, Allied World Specialty Insurance Company, prays for:

    a.    Judgment against the Defendants, in the amount of its actual costs and estimated loss to date, plus all costs and expense, including attorney fees and interest, in the amount that Allied World has incurred;

    b.    Order the Defendants to indemnify and exonerate Allied World for all liabilities, losses, and expenses incurred by Allied World as a result of Allied World having executed the bonds;

    c.    For such additional relied as this Court deems appropriate.

### COUNT IV
### Preliminary Injunction

56. Allied World incorporates by reference all of its allegations contained in paragraphs 1 through 55 as if each were fully alleged herein.

57. By the express provisions of the Indemnity Agreement and by virtue of the equitable doctrines of exoneration and *quia timet*, Allied World is entitled to have the Defendants place funds or other security with it upon demand that are sufficient to cover the above-described Bond claims.

58. Unless preliminary injunctive relief is granted, Allied World will not

be adequately secured for its obligations prior to resolving the pending claims under the Bond or incurring further bond expenses. Further, unless the preliminary injunctive relief is granted, the Defendants are likely to sell, transfer, dispose, lien, secrete, or otherwise divert their assets from being used to discharge the Defendants' obligations to exonerate and indemnify Allied World, all to Allied World's irreparable harm.

## PRAYER FOR RELIEF ON COUNT IV

WHEREFORE, Allied World prays the Court for judgment as follows:

    a.    To issue a Preliminary Injunction ordering the Defendants to place with Allied World the initial amount of $1,300,000.00 of funds by money, property, or liens or security interests in property, and any additional amount as determined by Allied World as security for its obligations under the Bond;

    b.    To enjoin and restrain Defendants from selling transferring, or disposing or liening their assets and property, and further enjoins and retrains Defendants from allowing their assets and property to be liened, unless and until Allied World shall receive the funds requested in paragraph a above;

    c.    To grant a lien upon all assets and property, including, realty, personalty, owned by Defendants and property in which the Defendants have

an interest. Such lien shall secure Allied World against any loss that it may sustain under the Bond. Such lien shall remain in effect unless and until Allied World shall receive the funds requested in paragraph a above;

      d.     To require the Defendants to indemnify and exonerate Allied World for all liabilities, losses, and expenses incurred by Allied World as a result of Allied World having executed the Bond;

      e.     To require the Defendants to provide Allied World access to the Defendants' books and records for inspection and copying pursuant to the terms of the Indemnity Agreement; and

      f.     For such other and further relief as the Court appropriate.

DATED this 1st day of August, 2016.

                                      JARDINE, STEPHENSON, BLEWETT & WEAVER, P.C.

                                      /s/ Joshua Campbell
                                      Attorneys for Plaintiff Allied World Specialty Insurance Company